## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MONEYHAM, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-00436 |
| v. | (MUNLEY, J.)<br>(SAPORITO, M.J.) |
| L. POTTER, EMT, et al., | |
| Defendants. | |

### REPORT AND RECOMMENDATION

This is a federal civil rights action, brought by *pro se* plaintiff Anthony Moneyham, a federal prisoner incarcerated at USP Lewisburg, located in Union County, Pennsylvania. The plaintiff's complaint was constructively filed on February 24, 2015, the date when he delivered it to prison officials for mailing. (Doc. 1). *See generally Houston v. Lack*, 487 U.S. 266, 270–71 (1988) (articulating the "prison mailbox rule"). The plaintiff has been granted leave to proceed *in forma pauperis* in this action. (Doc. 10).

In the complaint, which names three individual corrections officials as defendants, Moneyham has alleged the violation of his federal constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In particular,

Moneyham alleges that on February 21, 2015, the three named defendants—together with additional unidentified corrections staff—assaulted him while he was in hand restraints. (Doc. 1). Moneyham further alleges that the assault was in retaliation for his refusal to end a hunger strike he had undertaken to protest the discontinuation of a medication prescription he had previously received. (*Id.*).

The defendants have moved to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that Moneyham has asserted only "official capacity" claims, which are barred by sovereign immunity. (Doc. 18; *see also* Doc. 19). Moneyham has filed a brief in opposition to the motion. (Doc. 20). The defendants have filed a reply. (Doc. 21). The motion is ripe for disposition.

For the reasons that follow, we recommend that the action be dismissed *sua sponte* for failure to state a claim and the defendants' motion be denied as moot.

## I. LEGAL STANDARD[1]

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). "The court's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Id.* at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of

---

[1] Because we recommend *sua sponte* dismissal of the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1), recital of the subject matter dismissal standard under Rule 12(b)(1) is unnecessary.

Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. DISCUSSION

### A. Sovereign Immunity

The defendants have moved to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that Moneyham has asserted official-capacity claims only, and such claims are barred by the doctrine of sovereign immunity.

As a sovereign, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). It is also well-settled that a suit against a federal prison official in his official capacity is essentially a suit against the United States, likewise barred by sovereign immunity in the absence of express statutory consent to sue. *See Bell v. Rossotti*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002).

But the *pro se* complaint in this action does not specify whether the three defendants—Emergency Medical Technician L. Potter, Emergency Medical Technitian M. Barth, and Corrections Officer Messenman—are

sued in their individual or official capacity. As the Third Circuit has observed, a federal court is obliged to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013). Given the complaint's silence on the matter, this Court will liberally construe it as asserting legal claims against these defendants in both their personal (individual) and official capacities. *See Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 638 n.8, 641 n.10 (E.D. Pa. 2010); *Shipley v. First Fed. Sav. & Loan Ass'n of Del.*, 619 F. Supp. 421, 431 (D. Del. 1985).[2]

Although it would be appropriate to dismiss any official capacity

---

[2] The defendants' motion references the service of process forms, Form USM-285, in which the *pro se* plaintiff provided the United States Marshal Service with address information for service of process upon the defendants. (*See* Doc. 12). In the "special instructions" section of the preprinted form, Moneyham wrote "official capacity." (*See id.*). Mindful of the Third Circuit's mandate in *Mala*, the Court finds the writing of these words on a USM-285 to be of no consequence in this instance—the Court will not construe this extrinsic, administrative document to amend the plain terms of the complaint, which do not otherwise limit the defendants to personal- or official-capacity liability. *Cf. Savacool v. Fitzgerald Mercy Catholic Med. Ctr.*, Civ. A. No. 92-2142, 1992 WL 185611, at *2 (E.D. Pa. July 21, 1992) (declining to construe complaint's reference to "et al." defendants to incorporate by reference individuals named on USM-285 but not in the complaint).

claims for lack of subject matter jurisdiction, Moneyham's personal capacity claims would survive. In light of our recommendation below that the entire action be dismissed *sua sponte* for failure to state a claim, it is recommended that the defendants' Rule 12(b)(1) motion be denied as moot.

## B. Exhaustion of Available Administrative Remedies

Before bringing a *Bivens* action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). A plaintiff is not required to allege that he has exhausted administrative remedies—failure to exhaust administrative remedies is an affirmative defense that generally must be pleaded and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("Prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners.") (alteration omitted). Nevertheless, "a complaint may be

subject to dismissal under Rule 12(b)(6) when an affirmative defense like the [failure to exhaust available administrative remedies] appears on its face." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Pena-Ruiz v. Solorzano*, 281 Fed. App'x 110, 112 n.3 (3d Cir. 2008) (per curiam); *Ray*, 285 F.3d at 293 n.5; *Schott v. Doe*, No. CIVA 05-1730, 2007 WL 539645, at *6 (W.D. Pa. Feb. 15, 2007).

Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with BOP deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v.*

*David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow.").

The BOP has established a multi-stage administrative remedy process through which an inmate may seek formal review of an issue related to any aspect of confinement. *See* 28 C.F.R. § 542.10 *et seq.*; *see also Nyhuis*, 204 F.3d at 77 n.12 (describing the administrative remedy process). At the first stage, the inmate is required to present an issue of concern *informally* to staff in an attempt to informally resolve the issue without a formal request for an administrative remedy. 28 C.F.R. § 542.13(a). If unable to satisfactorily resolve the issue informally, the inmate must file a formal written administrative remedy request on BOP Form BP-9. *Id.* § 542.14(a). Ordinarily, the inmate's BP-9 must be submitted to the Warden within 20 calendar days following the date on which the basis for the administrative remedy occurred. *Id.* If dissatisfied with the Warden's response, the inmate may submit a written appeal to the appropriate Regional Director on BOP Form BP-10. *Id.* § 542.15(a). Ordinarily, the inmate's BP-10 must be submitted within 20 calendar days of the date the Warden signed his or her response. *Id.* If dissatisfied with the Regional Director's response, the inmate may submit a written appeal

to the BOP's General Counsel on BOP Form BP-11. *Id.* The inmate's BP-11 must be submitted within 30 calendar days of the date when the Regional Director signed his or her response. *Id.* This review by the BOP's General Counsel is the final administrative appeal for administrative remedy requests by federal prisoners. *Id.* The BOP regulations expressly provide for extension of these deadlines in a variety of circumstances. *See id.* § 542.14(b); 28 C.F.R. § 542.15(a).

The BOP regulations also provide an alternative procedure for an inmate who "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." *Id.* § 542.14(d). In such a case, the inmate is permitted to submit his administrative remedy request directly to the Regional Director. *Id.* The request must be clearly marked "Sensitive" and include a written explanation why it has not been submitted at the institution level. *Id.* If the Regional Administrative Remedy Coordinator agrees that the request is sensitive, it will be accepted for action at the regional level. *Id.* If the coordinator does not agree, the inmate is advised in writing that the request has not been accepted and that he may pursue the matter by resubmitting it at the institution level; the request itself is

not returned, presumably for security reasons. *Id.* If resubmitted to the Warden, the inmate is entitled to a "reasonable extension" of the usual 20-day BP-9 filing period. *Id.*; *see also id.* § 542.14(a).

Here, it is clear from the face of the complaint that Moneyham's claim is barred by his failure to exhaust all available administrative remedies before filing suit. As the Third Circuit has observed, "[t]he Prison Litigation Reform Act ('PLRA') prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials '*until* such administrative remedies as are available are exhausted.'" *Oriakhi v. United States*, 165 Fed. App'x 991, 993 (3d Cir. 2006) (per curiam) (quoting 42 U.S.C. § 1997e(a)) (emphasis in original). "To satisfy this requirement, a prisoner must exhaust all available administrative remedies *prior to* filing suit . . . ." *Id.* (emphasis added); *see also Millbrook v. United States*, 8 F. Supp. 3d 601, 611 (M.D. Pa. 2014) ("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'") (citations omitted, brackets in original).

Moneyham initiated this action with the filing of his complaint on

February 24, 2015, *three days* after the alleged assault upon which it is based. The complaint explicitly acknowledged that a grievance procedure was available and that Moneyham had not fully exhausted it at the time of filing. (Doc. 1, at 2). In particular, the complaint acknowledged that he had filed Administrative Remedy No. 804617-F1, but this administrative grievance was still "in the 1st part of a 3 part procedure." (Doc. 1, at 2–3).

Clearly, with respect to the February 21, 2015, incident upon which this action is based, the plaintiff's administrative remedies were not exhausted prior to the initiation of suit. *See Oriakhi*, 165 Fed. App'x at 993. "The fact that he [may have] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. . . . [A] prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Id.*

Accordingly, it is recommended that this action be dismissed without prejudice *sua sponte* for failure to exhaust available administrative remedies prior to filing suit.

## C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is

vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, it is clear that amendment would be futile, as his claims are barred for failure to exhaust administrative remedies before filing this civil action, a precondition to suit that cannot be cured by amendment. It is therefore recommended that this action be dismissed *without* leave to amend.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. This action be **DISMISSED without prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1);

2. The defendants' motion to dismiss (Doc. 18) be **DENIED as moot**;

3. The plaintiff's motion for leave to file a supplemental complaint (Doc. 26) be **DENIED as moot**; and

4. The Clerk be directed to mark this case as **CLOSED**.

**Dated: March 16, 2016**            *s/ Joseph F. Saporito, Jr.*
                                                          **JOSEPH F. SAPORITO, JR.**
                                                          **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MONEYHAM, | |
| Plaintiff, | CIVIL ACTION NO. 3:15-cv-00436 |
| v. | (MUNLEY, J.)<br>(SAPORITO, M.J.) |
| L. POTTER, EMT, et al., | |
| Defendants. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated March 16, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

- 2 -

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: March 16, 2016**         *s/ Joseph F. Saporito, Jr.*
                                  **JOSEPH F. SAPORITO, JR.**
                                  **United States Magistrate Judge**